**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CANAAN APOTHECARY, LLC;** | : | |
| **ELAINE LAROCHE,** | : | |
| **Plaintiffs/Counterclaim** | : | |
| **Defendants,** | : | |
| | : | |
| **v.** | : | **CASE NO. 3:12-cv-1571 (VLB)** |
| | : | |
| **MAXI DRUG, INC.;** | : | |
| **RITE AID CORPORATION,** | : | |
| **Defendants/** | : | |
| **Counterclaim Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SALISBURY PHARMACY** | : | |
| **GROUP, LLC,** | : | |
| **Counterclaim Defendant.** | : | **February 25, 2014** |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [DKT. 14]**

**INTRODUCTION**

Plaintiffs Canaan Apothecary, LLC ("Canaan Apothecary") and Elaine La
Roche (collectively, "Plaintiffs") bring this action against Defendants Maxi Drug,
Inc. ("Maxi Drug") and Rite Aid Corporation ("Rite Aid") (collectively,
"Defendants"), alleging breach of contract (Count 1); unfair competition and trade
practices under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.
Gen. Stat. § 42-110b (Count 2); and tortious interference with business relations
(Count 3). The Plaintiffs request, among other things, actual and punitive
damages for each of these counts, as well as attorneys' fees and costs.  The
Defendants have moved to dismiss each of these claims except the breach of

contract claim, where they have moved only for dismissal of the request for punitive damages.  For the reasons set forth below, the Motion to Dismiss is denied as to Plaintiff's claim for punitive damages as a remedy for breach of contract, and granted as to Count Two of the Complaint, Plaintiffs CUTPA claim, and Count Three of the Complaint, Plaintiffs' claim for tortious interference with business relations.  Counts Two and Three are dismissed without prejudice to re-pleading in an Amended Complaint.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts and allegations are taken from Plaintiffs' Complaint unless otherwise noted.  Canaan Apothecary, a pharmacy, was founded by La Roche in 2006 in Canaan, Connecticut. [Compl. ¶¶ 7-8]. Canaan Apothecary is a limited liability company organized under the laws of Connecticut, which is also its principal place of business. [Compl. at ¶ 2].  Plaintiff La Roche also owns and operates a pharmacy in the town of Salisbury, Connecticut (the "Salisbury Pharmacy").  [Compl. ¶ 17].  The Salisbury Pharmacy was not included in the sale to Defendants.

Maxi Drug and Rite Aid are both corporations organized under the laws of Delaware, with principal places of business in Pennsylvania.  [Compl. at ¶¶ 3-4] Both conduct business in Connecticut. [Compl. at ¶¶ 3-4]. A Rite Aid store was Canaan Apothecary's sole competitor in Canaan, Connecticut. [Compl. at ¶ 9].

On September 25, 2012, the Plaintiffs entered into a Purchase and Sale Agreement (the "Agreement") to sell the assets of Canaan Apothecary to the Defendants.  [*Id.* at ¶ 10]. Under the terms of the Agreement, the Defendants

would purchase Canaan Apothecary's inventory, prescription files, records, and data, and the right to use the name "Canaan Apothecary." [Compl. at ¶ 14]. The Agreement also required that Plaintiffs close Canaan Apothecary, which would leave Rite Aid as the only pharmacy in Canaan, Connecticut. [Compl. ¶ 15]. In order to prevent competitors from occupying the former location of Canaan Apothecary, the Agreement also established a "Lease Escrow", which required Defendants to reimburse Plaintiff for the cost of paying the existing lease for Canaan Apothecary at least through the expiration of the lease in June 2014. [Compl. ¶ 16]. The Agreement also required Plaintiffs to transfer the phone numbers for Canaan Apothecary to Rite Aid, and gave Rite Aid the right to post signs at the location of Canaan Apothecary for ninety days following the closing of the transaction.  [Agreement § 9.][1]

The Agreement contained representations and warranties including the following: Plaintiffs "have not at any time prior to the date hereof either directly or indirectly transferred or otherwise given copies of any of the Files and Records to anyone, nor shall they do so at any time prior to or after the [closing of the transaction]. Seller and Principal shall transfer the same exclusively to Rite Aid on the Inventory Date."  [Agreement § 4(h)].  The representations and warranties also provided that Canaan Apothecary and its principal Ms. LaRoche "shall

---

[1] The Agreement can be found attached as Exhibit 1 to Defendant's Motion to Dismiss.  [Dkt. 15, Exh. 1.] Although the Agreement is also Exhibit A to the Complaint, the actual document was not attached to the Complaint, which was originally filed in state court, pursuant to Connecticut Practice Book Section 10-29, which provides: "Except as required by statute, the plaintiff shall not annex the document or documents referred to as exhibits to the complaint, or incorporate them in the complaint, at full length."

3

conduct business at [Canaan Apothecary] in the ordinary course, diligently, and in the same manner as heretofore until the [closing of the transaction]. Seller and Principal will not sell, remove or dispose of any of the Purchased Assets located in the Location (other than in the ordinary and normal course of business. [Agreement § 4(l)]  The Agreement is subject to termination by either party on five days' notice, and would be null and void, if the representations and warranties, set forth in Section 4 of the Agreement, are not "true and correct in all material respects" on the date the Agreement was made and at the time of closing. [Agreement § 25.]

Additionally, by the terms of the Agreement, Plaintiffs agreed not to compete or solicit customers within a ten mile radius of the Canaan Apothecary's location for five years following the closing of the transaction.  [Compl. ¶ 17]. Section 7(b) of the Agreement provides that: "Nothing herein shall prohibit [Plaintiffs] from engaging in general solicitation of customers (including solicitations targeted at residents of a particular town or towns) so long as such solicitation is not targeted at customers of [Canaan Apothecary]."  [Agreement § 7(b).]  The closing date of the transaction was set for October 18, 2012. [Compl. ¶ 39].

On October 2, 2012, Plaintiffs began soliciting customers of Canaan Apothecary by informing them of the planned closing of Canaan Apothecary, and informing customers that they could transfer their prescriptions to another pharmacy, including the option to transfer to Rite Aid, and providing customers of Canaan Apothecary with a one-page information memorandum, announcing

the planned closure of Canaan Apothecary and stating that "Salisbury Pharmacy (860 435-9388) will be pleased to transfer prescriptions if you give them a call, and will continue to provide home and office delivery services to the Canaan Apothecary customers." [Compl. ¶¶ 28-29; Compl. Ex. C.] The memorandum did not contain any mention of Rite Aid or Maxi Drug. [Compl. Ex. C].  In addition to providing the memorandum to customers of Canaan Apothecary, the Plaintiffs also sent a press release announcing the planned closure of Canaan Apothecary to two newspaper reporters on October 4, 2012.  [Compl. ¶ 29; Compl. Ex. D.]  The press release suggested that customers of Canaan Apothecary and their doctors could transfer their prescriptions to Salisbury Pharmacy, and did not state that customers had the option of transferring their prescriptions to Rite Aid.  [Compl. Ex. D.]  The press release read: "To make this transition as easy as possible, clients and doctors can transfer their prescriptions to Salisbury Pharmacy which will continue delivery services to Canaan, and where long time Canaan resident, Claudia Callinan is the pharmacy manager . . . and where you will recognize many of the staff."  [Compl. Ex. D.]

Plaintiffs assert in their Complaint, without attribution to any regulation or other official pronouncement, that the State of Connecticut Commission of Pharmacy recommends that closing pharmacies "inform customers . . . in advance" of the closing and of their options to transfer prescriptions, and that the notices they gave customers were intended to give their customers advance notice of the planned closing so that they would not be caught by surprise. [Compl. ¶¶ 27, 30.]  In their opposition to the motion to dismiss Plaintiffs cite to

Conn. Gen. Stat. § 20-615(d) as requiring them to provide notice to their customers.  [Dkt. 21, Pl. Opp. Br. at 4 n.2, 17 n.6, 19-20.]  However, Plaintiffs do not assert that they were required by any statute, regulation, or administrative agency to encourage their customers to transfer their prescriptions to Salisbury Pharmacy specifically.

The parties expected Canaan Apothecary to transfer approximately 549 prescriptions to Rite Aid.  [Agreement § 2.01.]  Between October 1 and October 17, Canaan Apothecary transferred 89 prescriptions for 31 customers to Rite Aid and 9 prescriptions for 3 customers to Salisbury Pharmacy. [Compl. ¶ 31.]

On October 5, counsel for Defendants sent a letter to Elaine La Roche indicating that she had breached the agreement, including but not limited to sections 4(l), 5, 7, and 15, and announcing that Defendants were terminating the Agreement. [Compl. ¶ 32; Compl. Ex. E.]  As noted above, Section 4(l) of the Agreement provides in relevant part: "Seller and Principal warrant and represent to Rite Aid and Guarantor as follows: . . . (l) [Plaintiffs] shall conduct business at [Canaan Apothecary] in the ordinary course, diligently, and in the same manner as heretofore until the [closing of the transaction]."  Section 5 provides: "All assets and property owned by Seller shall be kept and maintained in the same condition, repair and working order as on the date of this Agreement while under the control of Seller."  Part (a) of section 7, titled "Restrictive Covenants," provides in relevant part that Plaintiffs "covenant and agree that they or any one of them will not . . . acquire, invest in, finance, own, operate, manage, assist, or support, . . . an enterprise (a competing business) which is engaged in the

business of any retail pharmacy, drug store or health and beauty aids business within a radius of ten (10) miles of [Canaan Apothecary] . . . for a period of five (5) years following the [closing of the transaction] and that they will not solicit the business of any current customers of [Canaan Apothecary] during the period aforesaid."  Part (b) of section 7 provides in relevant part: "Notwithstanding anything to the contrary in this Agreement, [Defendants] acknowledge and agree (i) that [La Roche], through affiliated companies, owns and operates a pharmacy known as Salisbury Pharmacy located in Salisbury, Connecticut and (ii) that the continued ownership and operation of such pharmacy . . . are permitted notwithstanding the provisions of Section 7 of this Agreement; provided, however, [La Roche] agrees that she will not, directly or indirectly, solicit the business of any former or current customers of [Canaan Apothecary] . . . during the period aforesaid for the benefit of Salisbury Pharmacy.  Nothing herein shall prohibit [Plaintiffs] from engaging in general solicitation of customers . . . so long as such solicitation is not targeted at customers of [Canaan Apothecary].  Section 15 provides in relevant part: "Buyer and Seller hereby covenant and agree to keep the information, terms, conditions, and details of any discussion and/or negotiations relating to this Agreement confidential; . . . Accordingly, neither party will disclose any details concerning any information, terms, conditions, negotiations or transactions to any other person, without limitation, employees of Seller (except as required by law), and customers of Seller, without first obtaining the other party's written consent, . . ."  There is no evidence in the record of the

number of prescriptions transferred to either Rite Aid or Salisbury Pharmacy at the time the October 5 letter was sent to Plaintiff LaRoche.

On October 8, Plaintiffs' counsel replied by letter to Defendants' October 5 letter, responding to Defendants' allegations of breach, protesting Defendants' termination, demanding that Defendants rescind the termination notice, and demanding the return of Canaan Apothecary's confidential information if the termination notice were not rescinded. [Compl. ¶ 33; Compl. Ex. F.].  In the October 8 letter, Plaintiffs notified Defendants that in reliance on the Agreement Plaintiffs had already taken several steps toward closing the transaction, including notifying their employees of the closing of Canaan Apothecary, allowing employees of Defendants to speak with employees of Canaan Apothecary, sharing sensitive proprietary information with Defendants' data conversion vendor, and beginning the transfer of prescriptions from Canaan Apothecary to Rite Aid.  [Compl. Ex. F.]

On October 12, Defendants sent Plaintiffs a letter in which they declined to rescind the termination of the Agreement, and stated that they interpreted the one-page information memorandum Plaintiffs had distributed to their customers as "directing the business that Rite Aid was planning to buy to [La Roche's] Salisbury Pharmacy."  [Compl. ¶ 34; Compl. Ex. G.]

The Plaintiffs filed this Complaint on October 19, 2012, in the State of Connecticut Superior Court, Judicial District of Litchfield. [Dkt. 1, Notice of Removal at 1].  On November 6, 2012, the Defendants removed the case to this

Court pursuant to 28 U.S.C. § 1332, on the grounds that there was complete diversity between the parties. [Dkt. 1, Notice of Removal at 2]

## II. STANDARD OF REVIEW

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-

pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). The Court may also consider "matters of which judicial notice may be taken or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).

## III. ANALYSIS

### A. Count One – Breach of Contract

In Count One of the Complaint, Plaintiffs allege a breach of contract claim against both Defendants. Plaintiffs seek as damages for the breach of contract claim actual damages, punitive damages, and all costs, including attorneys' fees. [Compl. ¶¶ 48-49.] Plaintiffs allege that Defendants' conduct was willful and wanton and/or malicious, and that Plaintiffs may thus seek punitive damages. [Compl. ¶ 48.] Defendants do not move to dismiss Plaintiff's breach of contract claim in its entirety. Rather, Defendants move only to dismiss Plaintiff's claim for

punitive damages arising from that alleged breach of contract.  [Dkt. 15, Def. Br. at 9.]  Defendants assert (1) that a plaintiff may not recover punitive damages for a breach of contract claim under Connecticut state law, and (2) that even if punitive damages were available, Plaintiffs' claim for punitive damages must be dismissed because Plaintiffs' complaint is inadequate to support a claim for punitive damages.  [Dkt. 15, Def. Br. at 9.]

The Court need not rule on Plaintiffs' request for punitive damages at this time.  Rule 12(b)(6) authorizes the Defendants assert that a complaint "[fails] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The text of the rule allows a defendant to challenge the underlying claim, but does not provide authority for challenging the forms of relief sought by a plaintiff.  At the motion to dismiss stage, plaintiffs need not prove that they are entitled to each form of relief sought, so long as they have adequately plead the underlying claim.  "[I]t need not appear that plaintiff can obtain the particular relief prayed for, as long as the court can ascertain that some relief may be granted." *Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 393 (S.D.N.Y. 1988) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1357, at 602 (1969)) (finding that plaintiff had adequately plead damages even if plaintiff was not ultimately entitled to consequential damages as asserted by defendant); *see also Sec. Nat'l Bank v. Abbott Laboratories*, No. 11-cv-4017-DEO, 2012 U.S. Dist. LEXIS 11929, at *64 (N.D. Iowa, Feb. 1, 2012) ("[P]unitive damages are not a cause of action, and as such, so long as there are surviving claims, they are not subject to a motion to

dismiss. Only after a plaintiff has proven their case are punitive damages considered.").

The authority Defendants cite as precedent for severing certain damages claims at the motion to dismiss stage, *Lagana & Persano, LLP v. Guarco Constr. Co.*, TTDCV116003720S, 2012 Conn. Super. LEXIS 38, at *1 (Conn. Super. Ct. Jan. 4, 2012), is distinguishable (1) because it is a state court case and not governed by the Federal Rules of Civil Procedure, and (2) because the Plaintiffs in that case agreed to drop their claim for attorneys' fees, and therefore the Court did not consider whether it was proper to parse the claims for relief at that stage of the litigation.  Because the Defendants here do not seek to dismiss Plaintiff's underlying breach of contract claim, and that claim thus goes forward, the Court need not reach the question of the availability of punitive damages at this time.

Even if the Court were to reach the question of the availability of punitive damages at this time, the Court would decline to dismiss such claim at this time. The parties do not dispute that Connecticut law has explicitly allowed that "[b]reach of contract founded on tortious conduct may allow the award of punitive damages."  *L.F. Pace & Sons, Inc. v. Travelers Indem. Co.*, 514 A.2d 766, 776 (Conn. App. Ct. 1986); *see also Triangle Sheet Metal Works v. Silver*, 222 A.2d 220, 225-26 (Conn. 1966).  "Such tortious conduct must be alleged in terms of wanton and malicious injury, evil motive and violence, for 'punitive damages may be awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.'"  *L.F. Pace & Sons*, 514 A.2d at 776 (quoting *Triangle Sheet Metal Works*, 222 A.2d at 226).  "There must

be an underlying tort or tortious conduct alleged and proved to allow punitive damages to be granted on a claim for breach of contract, express or implied. Elements of tort such as wanton or malicious injury or reckless indifference to the interests of others giving a tortious overtone to a breach of contract action justify an award of punitive or exemplary damages." *L.F. Pace & Sons*, 514 A.2d at 776.

Defendant argues that punitive damages for breach of contract are limited to cases involving contracts of insurance. [Dkt. 15, Def. Br. at 9-10.] However, the Court is not convinced that punitive damages for breach of contract are limited to contracts of insurance. The case cited by Defendants, *Barry v. Podi-Seal Int'l, Inc.*, 40 Conn. App. 577, 588 n.1 (Conn. App. 1996), says only that "the principles announced in Triangle Sheet Metal have been followed only in regards to insurance." That statement is an observation that past precedent regarding punitive damages for breach of contract is limited to insurance cases. Although the statement does cast some doubt on the viability of punitive damages for breach of contract outside the realm of contracts of insurance, it is not the announcement of a blanket rule limiting punitive damages in breach of contract cases to contract of insurance cases going forward.

Further, dicta in a recent Second Circuit opinion suggests that the Second Circuit does not find Connecticut law to limit punitive damages for breach of contract to cases involving contracts of insurance. In *Edible Arrangements Int'l, Inc. v. Chinsammy, et al.*, 446 Fed. Appx. 332 (2d Cir. 2011), the Second Circuit affirmed the district court's denial of plaintiff's claim for punitive damages. In

discussing the requirements for maintaining a claim for punitive damages for breach of contract in Connecticut, the Second Circuit makes no mention of any requirement that such punitive damages be limited to insurance cases. *Edible Arrangements*, 446 Fed. Appx. at 334. Additionally, at least one other Court in this district has recognized in dicta that punitive damages may be recovered in an action alleging a breach of warranty. *See Makuch v. Stephen Pontiac-Cadillac, Inc.*, No. 3:12-cv-866, 2013 U.S. Dist. LEXIS 724, at *3-4 (D. Conn. Jan. 3, 2013) ("Under Connecticut law, punitive damages are available for a claim of breach of warranty if plaintiff alleges conduct that is 'done with a bad motive or with a reckless indifference to the interests of others.'") (quoting *L.F. Pace & Sons*, 514 A. 2d at 776).

For the foregoing reasons, the Court declines to dismiss at this time Plaintiffs' request for punitive damages as a remedy for the alleged breach of contract. The Court notes that Defendants are correct that Plaintiffs must ultimately prove to the finder of fact that the breach of contract was founded on tortious conduct in order to recover punitive damages in this case.

**B.  Count Two – CUTPA**

In the second count of the Complaint, Plaintiffs allege that Defendants' actions in terminating the Agreement violated CUTPA.  CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b (2013).  Defendants assert that Plaintiffs' CUTPA claim must be dismissed for three reasons (1) Plaintiffs fail to allege that Defendants' alleged

14

acts were carried out in the course of Defendants' primary business of operating retail pharmacies; and (2) that Plaintiffs' Complaint does not contain allegations of aggravating circumstances beyond the breach of contract and therefore is insufficient to state a claim for violation of CUTPA, and (3) that Plaintiffs' CUTPA claim contains merely conclusory statements and a bare recitation of the elements of the claim, and is thus insufficient to state a claim.

Connecticut courts have adopted the criteria in the Federal Trade Commission's cigarette rule as the standard for determining whether a practice violates CUTPA: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . . ." *Naples v. Keystone Bldg. & Dev. Corp.*, 990 A.2d 326, 336-37 (Conn. 2010) (quoting *Votto v. American Car Rental, Inc.*, 871 A.2d 981, 984-85 (Conn. 2005)).  "All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Naples*, 990 A.2d at 337 (quoting *Votto*, 871 A.2d at 985).  "[N]ot every contractual breach rises to the level of a CUTPA violation." *Naples*, 990 A.2d at 337 (quotation and citations omitted).  "It is well settled that whether a defendant's acts constitute . . .

15

deceptive or unfair trade practices under CUTPA, is a question of fact for the trier of fact." *Naples*, 990 A.2d at 337 (quotation and citation omitted).

"A simple breach of contract cannot sustain a CUTPA claim, absent some allegation as to 'how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy.'" *Vega v. Sacred Heart Univ., Inc.*, 836 F. Supp. 2d 58, 64 (D. Conn. 2011) (quoting *Gabriele v. Sanzaro*, No. 3:10-CV-38, 2010 U.S. Dist. LEXIS 72546, at *9 (D. Conn. July 19, 2010)).  In other words there must be some "significant aggravating circumstances." *Empower Health, LLC v. Providence Health Solutions, LLC*, No. 3:10cv1163, 2011 U.S. Dist. LEXIS 60142, at *19 (D. Conn. June 3, 2011) (citing *Saturn Constr. Co. v. Premier Roofing Co.*, 680 A.2d 1274, 1283 (Conn. 1996)).

Defendants assert that to be liable under CUTPA, the Plaintiffs are required to show that the alleged offense arose out of Defendants' "primary trade or business." *McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 890 A.2d 140, 163 (Conn. App. Ct. 2006).  Defendants argue that the Plaintiffs' Complaint does not allege that Defendants' primary business is the purchase of assets, and that therefore Plaintiffs have failed to adequately plead that the alleged offense arose out of Defendants' primary business.  However, the Court finds that there is precedent supporting the finding that the sale of a business is "conduct to which CUTPA squarely applies", and the Court thus declines to dismiss Plaintiffs' CUTPA claim for this reason.  *Halo Tech Holdings, Inc. v. Cooper, et al.*, No. 3:07-CV-489, 2008 U.S. Dist. LEXIS 24831, at *55 (D. Conn. Mar. 27, 2008) (denying defendants' motion to dismiss CUTPA claim arising from a

business deal by which plaintiff would sell a subsidiary company to defendants); *see also Neato, LLC v. Soundview Partners*, No. CV010450989, 2002 Conn. Super. LEXIS 1897, at *1-5 (Conn. Sup. Ct. May 30, 2002) (declining to strike plaintiffs' CUTPA claim arising from the breach of an agreement by which defendant was to purchase plaintiff's assets and business); *TIE/Communications v. Kopp*, 1992 Conn. Super. LEXIS 2421, at *5-7 (Conn. Sup. Ct. Aug. 18, 1992) (denying plaintiff's motion to strike defendant's CUTPA counterclaim arising from defendants' purchase of a subsidiary wholly-owned by plaintiff).  Further, even without such precedent, the Court is not convinced that the purchase and closure of a competing pharmacy, that would include the absorption of the competing pharmacy's customers, is outside the Defendants' primary business.

Defendants' second argument in favor of dismissal of Plaintiffs' CUTPA claim is that Plaintiffs' complaint does not contain the allegations of significant aggravating circumstances necessary for a breach of contract to rise to a CUTPA violation.  Although "the Connecticut Supreme Court has held that a party's refusal to perform under a valid contract while retaining the benefits of that contract constitutes a breach accompanied by significant aggravating circumstances," *Empower Health*, 2011 U.S. Dist. LEXIS 60142, at *18-19 (quoting *Saturn Constr. Co.*, 680 A.2d at 1283), Plaintiffs have not plead that Defendants had received benefits under the contract at the time of termination.

As discussed above in Part III.A, the Complaint alleges that Plaintiffs transferred 89 prescriptions for 31 customers to Defendants between October 1, 2012 and October 17, 2012.   [Compl. ¶ 31.]  Defendants terminated the agreement

on October 5, 2012.  [Compl. ¶ 32.]  Nothing in the Complaint states that any prescriptions had been transferred to Defendants by the time Defendants terminated the agreement.  In Plaintiffs' October 8, 2012 response to Defendants' notice of termination, Plaintiffs state that they have "begun facilitating transfers of prescriptions from Canaan Apothecary to the Canaan Rite Aid."  [Compl., Ex. F.]  This letter also does not indicate whether any prescriptions had been transferred to Rite Aid by October 5, 2012.  Nor do Plaintiffs allege that Defendants had received any benefit as of October 5, 2012 from communications with Plaintiffs' employees, or by the transfer of Plaintiffs' confidential data to a third-party vendor.  Plaintiffs have thus failed to plead that Defendants received some benefit for which Plaintiffs were not compensated as of the time of the termination of the Agreement.

Nor have Plaintiffs plead facts sufficient to claim that Defendants acted with the intent to eliminate Plaintiffs' competing pharmacy without paying for it. Plaintiffs' Complaint does not allege that Defendants entered into the contract without the intent to complete it, nor does the Complaint contain any facts to support such a claim.  Further, Plaintiffs do not plead any facts to show that Defendants were aware as of the time they terminated the agreement on October 5, 2012 that Canaan Apothecary had been damaged and that its continued existence might be in doubt.  Plaintiffs have failed to plead the "aggravating circumstances" required to plead a CUTPA claim.  As will be discussed in further detail below, Plaintiffs will be given leave to replead this claim.

18

*Geddie v. Cadle Co.*, 714 A.2d 678 (Conn. App. Ct. 1998) is distinguished

from this case.  In *Geddie*, plaintiff borrower signed a letter agreement with his

lender by which the terms of two loans were renegotiated.  While the parties were

negotiating the terms of the restructuring the lender put the loans up for sale at a

public auction.  714 A.2d at 680.  The auction made clear that the borrower and

lender were negotiating new terms that would bind whoever purchased the loans

at the auction.  714 A.2d at 680-81.  After the loans were sold to defendant,

plaintiff filed suit to force performance by the buyer of the loans.  714 A.2d at 681.

Defendant argued that the letter agreement by which the loans were renegotiated

was void, because the deal was not closed within thirty days as required by the

terms of the letter agreement.  714 A.2d at 682.  Although the deal was not closed

within thirty days as required by the agreement, the court found that defendant

had waived that term of the letter agreement choosing not to enforce it and

proceeding to close the deal.  714 A.2d and 682.  In finding that defendant had

violated CUTPA, the trial court took note of the "clear acknowledgement that

[defendant] had stepped into the shoes of [the original owner of the loan] with full

knowledge of the agreement by [defendant]."  714 A.2d at 685.  Additionally, the

Connecticut Appellate Court found that "[defendant] openly acknowledges the

existence of an agreement by which it is bound yet refuses to honor."  714 A.2d at

685; *see also BAC Home Loans Servicing, L.P. v. Carol P. Presutti et al*,

HHDCV095029746S, 2010 Conn. Super. LEXIS 883, at *3-4 (Conn. Super. Ct. Apr.

8, 2010) (refusing to strike plaintiff's CUTPA claim where plaintiff plead that

defendant agreed to modify plaintiff's loan and then refused to honor the

modification); *cf. Neubig v. Luanci Constr.*, No. X10UWYCV075005853S, 2008 Conn. Super. LEXIS 738, at *6-7 (Conn. Super. Ct. Mar. 27, 2008) (refusing to strike CUTPA claim where plaintiff plead that defendant acknowledged the existence of the agreement and threatened breach in an attempt to renegotiate the terms of the agreement to defendant's advantage and defendant retained the benefit of a $600,000 contribution by plaintiff, as well as plaintiff's time, labor and money). This is not the case here.  Defendants' October 5 letter to Plaintiffs shows that Defendants believed Plaintiffs themselves to have breached the agreement, and therefore Defendants did not acknowledge that there existed an agreement by which they were bound.  *Cf. GJN Advisors, Inc. v. Woolrich, Inc.*, No. 3:09-cv-228, 2010 U.S. Dist. LEXIS 145009, at *5-6 (D. Conn. Jan. 20, 2010) (dismissing plaintiff's CUTPA claim because plaintiff failed to plead significant aggravating circumstances where "it is abundantly clear that the parties had differing interpretations of their agreement and that is the source of the dispute that is before the Court.").  This case is also distinguishable because the timing of the closing was not shown to be material whereas here the number of prescriptions contemplated to be transferred was a, if not the singular, material term of the agreement.

　　　Nor is *Crossroads Communs. Of Old Saybrook, LLC v. Tower Ventures, Inc.*, No. 03:03cv00459, 2004 U.S. Dist. LEXIS 24094 (D. Conn. Nov. 17, 2004) persuasive here, as Plaintiffs have not plead that Defendants' asserted reason for the termination of the contract was the product of their own self-serving delay.  In *Crossroads*, the defendant terminated the contract after the deadline for certain

required actions was not met.  2004 U.S. Dist. LEXIS 24094, at *1. The *Crossroads* court denied the defendant's motion for summary judgment on the CUTPA claim, finding that the necessary actions were all in defendant's own control, and thus defendant's stated reason for termination of the agreement, the failure to meet the deadline, would have been defendant's own fault.  2004 U.S. Dist. LEXIS 24094, at *12-14.

Although Plaintiffs argue in their opposition to Defendants' motion to dismiss that "[a] CUTPA claim is proper where it is alleged that a party refuses to perform under a contract while simultaneously retaining the benefits of the agreement", [Dkt. 21, Pl. Opp. Br. at 16], and cites precedent supporting that point, [Dkt. 21, Pl. Opp. Br. at 16-17], the Plaintiffs have failed to plead that Defendants had received the benefits of the agreement before sending the October 5 letter.  Nor does the complaint allege that the Defendants received the benefit of the agreement as it received a mere fraction of the prescriptions contemplated to be transferred by the agreement. This case is thus distinguishable and the Court finds that Plaintiffs have failed to plead the significant aggravating circumstances necessary to plead a CUTPA claim in this case.

## C.  Count Three – Tortious Interference With Business Relations

In the third and final count of the Complaint, Plaintiffs allege that Defendants tortiously interfered with Plaintiffs' business relationships with its pharmacy customers.  [Compl. ¶¶ 56-60.]  Under Connecticut law, a claim of tortious interference with business expectancies requires three elements: "(1) a

21

business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss."" *Am. Diamond Exch. v. Alpert*, 28 A.3d 976, 986 (Conn. 2011) (quoting *Hi–Ho Tower, Inc. v. Com–Tronics, Inc.*, 761 A.2d 1268, 1273 (Conn. 2000)).  Further, "not every act that disturbs a business expectancy is actionable.  A claim is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. . . . Accordingly, the plaintiff must plead and prove at least some improper motive or improper means . . . . For a plaintiff successfully to prosecute such an action it must prove that  . . . the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . In the context of a tortious interference claim, the term malice is meant not in the sense of ill will, but intentional interference without justification. . . . In other words, the plaintiff bears the burden of alleging and proving lack of justification on the part of the defendant."  *Reyes v. Chetta*, 71 A.3d 1255, 1259-60 (Conn. App. Ct. 2013) (internal quotations and modifications omitted).

Defendants move to dismiss this claim, arguing (1) that Plaintiffs have insufficiently plead the second element of a claim for tortious interference because nothing obligated the Plaintiffs to provide notice to their customers prior to the closing of the transaction, and because any interference with Plaintiffs' business relationships with its customers was the result of Plaintiffs' own actions in alerting their customers, and (2) that even if the Plaintiffs successfully alleged

22

interference, the Complaint does not describe any interference egregious enough to be tortious.

In determining whether a party's interference is improper or without justification, Connecticut courts "consider several factors set forth in the Restatement (Second) of Torts, § 767, including: '(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.'" *McIntire Co. v. Trent*, No. CV116010259, 2013 Conn. Super. LEXIS 2647, at *20 (Conn. Super. Ct. Nov. 20, 2013) (quoting *Am. Diamond Exch., Inc. v. Alpert*, 920 A.2d 357, 364 n.4 (Conn. App. Ct. 2007)).

In regards to Defendants' first argument for dismissal of the tortious interference claim, the Court first notes that Defendants have cited no authority to support the assertion that Plaintiffs must plead that Defendants had direct contact with Plaintiffs' customers in order for liability to attach.  Second, the Court finds that it is not necessary for Plaintiffs to allege that Defendants had direct contact with Plaintiffs' customers in order to bring a claim for tortious interference.  *Cf. Johns v. Brown*, No. CV085024593, 2009 Conn. Super. LEXIS 1604, at *6-7 (Conn. Super. Ct. June 12, 2009) (denying defendants' motion to strike tortious interference claim alleging that defendant auto dealer induced plaintiff to default on its lease payments to a third party auto dealer).

23

Plaintiffs allege that the State of Connecticut Commission of Pharmacy (the "Commission of Pharmacy") recommended to Plaintiffs that they inform their customers that they were closing.  [Compl. ¶ 27.]  Plaintiffs also claim in their opposition brief that Connecticut pharmacies are required by state law to give notice when they close, citing to Conn. Gen. Stat. § 20-615(d).  [Dkt. 21, Pl. Opp. Br. at 4 n.2, 17 n.6.] Conn. Gen. Stat. § 20-615(d) provides that: "When a pharmacy closes temporarily or permanently, the pharmacy shall, . . . post a notice of this availability on the window or door of the closed pharmacy."  Conn. Gen. Stat. § 20-615(d) (2013).  Although the Court does not reach in this opinion the question of whether Conn. Gen. Stat. § 20-615(d) required Plaintiffs to provide the notices they provided here, such a finding is unnecessary for the purpose of this motion to dismiss.  Assuming for the purpose of this opinion that the Commission of Pharmacy recommended to Plaintiffs that they give notice to their customers prior to the closing, the Complaint does not assert that Connecticut regulators or Connecticut law instructed Plaintiffs to distribute a notice to their customers, [Compl. Ex. C], or a press release, [Compl. Ex. D], that suggests customers transfer their prescriptions to Salisbury Pharmacy with no mention of the option to transfer prescriptions to Rite Aid.  As a result, Plaintiffs' complaint fails to plead the "lack of justification" that Plaintiffs must show to demonstrate tortious interference.

Further, regardless of whether Plaintiffs were required to give notice to their customers or not, Plaintiff pleads no facts in the Complaint to support the allegation that Defendants induced Plaintiff to enter into the contract with the

intention of having Plaintiff give this notice and to then take Plaintiffs' customers without compensating Plaintiffs.  The fact that Canaan Apothecary is the only competition for Rite Aid in Canaan, Connecticut is insufficient to plead a claim for tortious interference.  Such unsupported conclusory allegations are insufficient to support Plaintiffs' claim for tortious interference.  Plaintiff will be given the opportunity to replead this claim in an amended complaint.

## CONCLUSION

For the above-described reasons, Defendants' motion to dismiss is denied as to Plaintiff's claim for punitive damages as a remedy for breach of contract, and granted as to Count Two of the Complaint, Plaintiffs CUTPA claim, and Count Three of the Complaint, Plaintiffs' claim for tortious interference with business relations.  Counts Two and Three are dismissed without prejudice to re-pleading in an amended complaint not later than fourteen (14) days after the date of this ruling.  The Defendants are ordered to answer or otherwise respond to the complaint within fourteen (14) days after the date an amended complaint is filed. SO ORDERED.

Dated at Hartford, Connecticut this 25th day of February, 2014.

_____/s/_____
Vanessa L. Bryant
United States District Judge